IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLY OSIER

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:16-cv-01061-MA

OPINION AND ORDER

GEORGE J. WALL
1336 E. Burnside St., Suite 130
Portland, OR 97214

    Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

LEISA A. WOLF
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff Shelly Osier seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I reverse and remand the Commissioner's decision for further administrative proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed her application for SSI on September 20, 2012, alleging disability beginning August 1, 2003, due to fatigue, cerebral palsy, lumbago, foot pain, post traumatic stress disorder ("PTSD"), anxiety, and depression. Tr. Soc. Sec. Admin. R. ("Tr.") at 73, 199, ECF No. 9. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on December 23, 2014, at which Plaintiff appeared with her attorney and testified. A vocational expert, Stephen R. Cardinal, also appeared at the hearing and testified. On January 23, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1965, and was 47 years old on the date her application was filed. Plaintiff completed high school. Plaintiff has past relevant work as a housekeeper. Tr. 29. Plaintiff also has worked as a janitor, an appointment setter, a dog washer, a dishwasher, a front desk clerk at a motel, and packer, but these jobs did not qualify as past relevant work. Tr. 101, 200, 206.

////

////

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Plaintiff had the following severe impairments: generalized anxiety disorder, PTSD, depressive disorder, alcohol and substance addiction disorder, borderline intellectual functioning, lumbago, chronic pain, and congenital pes planus. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work with additional limitations:

> She can stand and walk two hours total in an eight hour work day. She can frequently climb ladders, ropes and scaffolds. She can frequently stoop, kneel, crouch and crawl. She can understand and remember simple instructions. She has sufficient concentration, persistence and pace to complete simple, routine tasks for a normal workday and workweek with normal breaks. She should have only occasional brief, superficial interactions with coworkers and the general public. She can accept supervision delivered in a normative fashion. She also should not be in a job that requires more than occasional verbal communication.

Tr. 23.

At step four, the ALJ found that Plaintiff is unable to perform her past relevant work. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as: small products assembler, electronics worker, and electrical accessory assembler. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act since September 20, 2012.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ erred by failing to find her memory impairment severe at step two; (2) the ALJ erred at step three in failing to evaluate whether Plaintiff's impairments are equivalent to listing 12.05C; (3) the ALJ improperly evaluated the opinion of Karla Causeya, Psy.D.; and (4) the ALJ erred at step five in finding Plaintiff can perform light work with additional limitations. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014);

*Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I. The ALJ Did Not Err Step Two

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9thCir. 2006). *See also* 20 C.F.R, §§ 416.920a, 416.921. A severe impairment "significantly limit[s]" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). *See also Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(a), (b).

In the decision, the ALJ found that Plaintiff had several severe mental impairments, including generalized anxiety disorder, PTSD, and depressive disorder. Tr. 20. Additionally, the ALJ found Plaintiff has numerous other impairments that are severe at step two, including alcohol and substance addiction disorder, borderline intellectual functioning, lumbago, chronic pain, and congenital pes planus. Tr. 20. Plaintiff argues that the ALJ erred in failing to find Plaintiff has memory limitations that are severe at step two. I disagree.

Here, the ALJ resolved step two in Plaintiff's favor, finding other severe impairments and continuing with the sequential evaluation. Therefore, even assuming *arguendo* the ALJ erred at step two, the error is harmless. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *see also Gray v. Comm'r Soc. Sec. Admin.*, 365 F. App'x 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were nonsevere, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 F. App'x 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments."). To the extent that Plaintiff alleges the ALJ erred in evaluating the medical evidence of her memory impairment when considering her RFC, I address that argument below. In short, even if the ALJ erred in failing to identify memory limitations as severe, the error is harmless.

## II. The ALJ Did Not Err is Failing to Consider Equivalency of Listing 12.05C

Plaintiff argues that the ALJ erred at step three in failing to consider whether Plaintiff equals listing 12.05C "Intellectual Disability." Plaintiff contends that because her IQ scores range between 71 and 79, the ALJ was required to determine whether she equaled listing 12.05C. Plaintiff's argument is not well taken.

A claimant is presumptively disabled and entitled to benefits if he or she meets or equals a listed impairment. *Staggs v. Colvin*, Case No. 6:15-cv-01060-MC, 2016 WL 4942002, *4 (D. Or. Sept. 14, 2016). To "meet" a listed impairment, a disability claimant must establish that her condition satisfies each element of the listed impairment in question. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in "severity and duration" to *each*

*element* of the most similar listed impairment. *Tackett*, 180 F.3d at 1099 (quoting 20 C.F.R. § 404.1526) (emphasis added).

"Listing 12.05C has three main components: (1) subaverage general intellectual functioning with deficits in adaptive functioning initially manifesting before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Because Plaintiff is contending that she *equals* listing 12.05C, Plaintiff is responsible for showing symptoms, signs and findings that are at least equal in severity and duration to each of these requirements, not simply overall functional impact. *Id; Sullivan*, 493 U.S. at 532.

Here, the ALJ did not err in failing to consider listing 12.05C. As the Commissioner correctly highlights, in her pre-hearing briefing and at the December 23, 2014 hearing, Plaintiff failed to proffer *any* argument that she equals listing 12.05C. Similarly, in the briefing before me, Plaintiff fails to advance any argument as to how her full scale IQ of 79 is medically equivalent to an IQ of 70 or less.

Moreover, there are not "symptoms, signs, or laboratory findings" in the record before me that could support a finding that Plaintiff has a full scale IQ score between 60 and 70. Plaintiff does not challenge the validity of her IQ score. Thus, there is simply no evidence from which the ALJ could have determined Plaintiff's impairments are equivalent to listing 12.05C. Accordingly, the ALJ did not err in concluding that Plaintiff did not meet or equal any listing. *Kennedy*, 738 F.3d at 1177-78 (holding claimant did not establish equivalency where evidence showed IQ score of 71; ALJ did not err at step three).

## II. The ALJ Erred in Evaluating Medical Evidence from Karla Causeya, Psy.D.

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Garrison*, 759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. § 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 416.927(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in failing to provide specific and legitimate reasons for discounting the opinion of Karla Rae Causeya, Psy.D. On November 11, 2014, Dr. Causeya

performed a psychodiagnostic evaluation of Plaintiff. Tr. 564. Dr. Causeya reviewed mental health records from Multnomah County in 2012 and 2013, the September 3, 2013 psychodiagnostic evaluation performed by Ronald Duvall, Ph.D., and interviewed Plaintiff. Dr. Causeya conducted a mental status examination with testing, including the WAIS-IV, Weschler Memory Scale-IV, and Trail Making A and B. Tr. 568-71. Dr. Causeya indicated that Plaintiff could subtract serial threes from 100, was able to recall a street address after a five minute delay, remembered the current president, but incorrectly recalled the day of the week. Tr. 567-68. Dr. Causeya noted that Plaintiff displayed no evidence of hallucinations or delusions, and had no suicidal thoughts. Tr. 568. Dr. Causeya indicated that Plaintiff spoke slowly and appeared to lose her train of thought, her range of affect was restricted, and her mood appeared anxious and depressed. Tr. 568. Dr. Causeya indicated that Plaintiff is independent with all daily functioning, noting that she cleans, cooks, travels by bus, enjoys painting, and participates in the Community Engagement Program for an hour or two each day. Tr. 568.

On testing, Plaintiff's full scale IQ was 79, and her working memory score was 71, both in the borderline category. Tr. 569. Dr. Causeya indicated that Plaintiff's working memory score was influenced by her extremely low performance on the Digit Span subtest, indicating that she has difficulty "storing numerical information in short term memory, producing a mental manipulation on that information, and producing a result." Tr. 569. Plaintiff's testing on Trail Making A and B showed difficulty with executive functioning. Tr. 570. On the WSM-IV, Plaintiff scored in the low average to borderline range. Tr. 570. Dr. Causeya indicated that Plaintiff "displayed a notable amount of forgetting between the immediate and delayed tasks" of the memory testing. Tr. 570.

Additionally, Plaintiff's scores demonstrated "difficulty recalling details that are presented in story form" and that she does better when presented with information multiple times. Tr. 571.

Dr. Causeya indicated that Plaintiff has slight or no restrictions in her activities of daily living, moderately severe limitations in understanding and memory, moderately severe limitations with sustained concentration and persistence, moderate difficulties with social functioning and adaption, and reported no episodes of decompensation. Tr. 571-72.

Dr. Causeya diagnosed Plaintiff with Borderline Intellectual Functioning, PTSD, Major Depressive Disorder, recurrent, and Alcohol Use Disorder, severe, in early remission. Dr. Causeya opined that Plaintiff's depression would not be alleviated quickly, and that her chronic pain exacerbated her depressive and traumatic symptoms. Tr. 572-73. Additionally, Dr. Causeya opined that Plaintiff is unable to obtain or maintain employment due to her multiple symptoms and cognitive deficits. Tr. 573. Dr. Causeya further opined that Plaintiff's memory deficits will persist, even though her PTSD and depression may lessen over time. Tr. 573.

Dr. Causeya also provided a Mental Residual Functional Capacity ("MRFC") Assessment dated November 26, 2014. In that attorney-provided check-the-box form, Dr. Causeya indicated that Plaintiff has moderately severe limitations with understanding and remembering short and simple one- to two-step tasks, as well as understanding and remembering detailed instructions. Tr. 574. Dr. Causeya indicated that Plaintiff has moderately severe limitations in her ability to maintain attention and concentration for at least two straight hours, her ability to sustain an ordinary routine without special supervision, and complete a normal work day or work week without interruptions from psychologically based symptoms. Tr. 575. Dr. Causeya also indicated that Plaintiff has moderately severe limitations in her ability to accept criticism and respond appropriately to criticism

from supervisors. Tr. 575. Lastly, Dr. Causeya opined that a routine, repetitive, simple entry-level job would "serve as a stressor that would exacerbate psychologically based symptoms." Tr. 575.

Because Dr. Causeya's opinion is contradicted, the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to discount the opinion.[1] *Bayliss*, 427 F.3d at 1216. In the decision, the ALJ throughly discussed Dr. Causeya's opinions and gave her findings "some weight," her narrative assessment "some weight," and her check-the-box form "no weight." Tr. 28. The ALJ discounted Dr. Causeya's opinion for four reasons: (1) Dr. Causeya failed to provide any explanation for the boxes checked; (2) the check box answers are inconsistent with those used by the Social Security Administration mental residual functional capacity assessments; (3) the checked boxes are inconsistent with the narrative assessment; and (4) Dr. Causeya's narrative assessment is inconsistent with Plaintiff's activities of daily living. Tr. 28.

The ALJ's first reason is not supported by substantial evidence. An ALJ may properly reject standardized, check-the-box forms if they are not supported by adequate reasoning and findings. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (ALJ properly rejected physician assistant's opinion where it consisted of a check the box form and failed to provide supporting reasoning). Contrary to the ALJ's finding, however, Dr. Causeya conducted a battery of objective intellectual and memory tests and prepared a 10-page written report detailing those findings. Tr. 564-73. Given the temporal proximity between the November 11, 2014 psychodiagnostic evaluation and the November 24, 2014 MRFC and that Dr. Causeya is a one-time examining physician,

---

[1] Dr. Causeya's opinion is contradicted by those of examining physician Ronald Duvall, Ph.D., and nonexamining physician James Buskirk, M.D. Dr. Duvall opined that Plaintiff has mild impairments in concentration, working memory, mental arithmetic skills and her fund of information was low. Tr. 476-77. Dr. Buskirk opined that Plaintiff has moderate difficulties in maintaining social functioning and to maintain concentration, persistence and pace. Tr. 95-96.

11 - OPINION AND ORDER

substantial evidence does not support the ALJ's rationale for rejecting Dr. Causeya's opinion because it lacked an explanation on the MRFC form itself. *See Woll v. Comm'r Soc. Sec. Admin.*, 94 F.Supp.3d 1198, 1204 (D. Or. 2015) (determining ALJ did not adequately discount physician's MRFC form).

The ALJ's second and third rationales similarly fail. The ALJ is correct that the attorney-created MRFC form used by Dr. Causeya is not consistent with those typically used by agency physicians to rate the severity of a claimant's mental health. However, the ALJ offered no explanation as to why the difference in forms is critical to Dr. Causeya's opinion. Without more, this does not provide substantial evidence to discount Dr. Causeya's opinion.

Additionally, the ALJ found that Dr. Causeya's checked box form was inconsistent with her narrative assessment showing that Plaintiff is able to remember instructions, keep appointments, travel by bus, prepare meals, and be independent in her daily living. A conflict between treatment notes and a treating provider's opinion may constitute an adequate reason to discredit the opinion of a treating physician or another treating provider. *See Molina*, 674 F.3d at 1111–12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine*, 574 F.3d at 692-93 (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion). However, Dr. Causeya found that Plaintiff had only slight or no restrictions in her activities of daily living. Tr. 571. The ALJ has offered no rationale as to how the moderately severe limitations with sustained concentration and pace and inability to tolerate the stressors associated with entry level work are undermined by Plaintiff's activities of daily living. Thus, the ALJ's third rationale is not supported by substantial evidence.

Lastly, the ALJ discounted Dr. Causeya's opinion because the narrative assessment is inconsistent with Plaintiff's activities of daily living including: "washing dishes, vacuuming, mopping, taking out the trash, cleaning, doing laundry, gardening, painting, grocery shopping, preparing simple meals, navigating public transportation, going to the movies, attending church and regularly attending CEP program group meetings." Tr. 28. Contrary to Plaintiff's contention, a discrepancy between a physician's opinion and a claimant's daily activities can provide a specific and legitimate reason to reject that opinion. *Ghanim*, 763 F.3d at 1162; *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). The ALJ's rationale falls short in this instance.

As indicated above, Dr. Causeya did not find that Plaintiff had limitations or restrictions in her activities of daily living, and therefore, on its face, the narrative assessment is not inconsistent with Dr. Causeya's opinion. Rather, Dr. Causeya's opinion that Plaintiff is unable to maintain competitive employment is premised upon Plaintiff's Borderline Intellectual Functioning, memory deficits, and potential increase in depression and PTSD symptoms as she pursues sobriety. Tr. 573. However, absent a more detailed explanation from the ALJ as to *how* Plaintiff's activities of daily living undermines Dr. Causeya's opinion, the ALJ's finding is not supported by substantial evidence.

In short, I conclude that the ALJ has erred by failing to provide specific and legitimate reasons backed by substantial evidence for discounting Dr. Causeya's opinion and MRFC. Because Dr. Causeya opined that Plaintiff is incapable of maintaining employment and found memory deficits based on testing not already validly discounted, I cannot conclude that the ALJ's error is harmless.

*Molina*, 674 F.3d at 1111 (court may reverse only for errors that are inconsequential to the nondisability determination).

Because I have found an error in the ALJ's evaluation of the medical evidence that may impact the RFC, I decline to address Plaintiff's step five argument.

## IV. Remand for Further Proceedings is Appropriate

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Garrison*, 759 F.3d at 1021. The issue turns on the utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). Generally, the proper course is to remand for further proceedings. *Beneke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed. *Garrison*, 759 F.3d at 1021. The Ninth Circuit has established a three part test to determine whether to credit evidence and remand for payment of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. It is an abuse of discretion to "remand[ ] for an award of benefits when not all factual issues have been resolved." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 n.5 (9th Cir. 2014). Even if the "credit-as-true" criteria are met, the court retains the "flexibility" to remand for further proceedings where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021; *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (holding court retains discretion whether to credit evidence).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. I have concluded that the ALJ committed harmful error in discounting Dr. Causeya's opinion. There is conflicting evidence in the record concerning Plaintiff's ability to sustain concentration and persistence throughout an entire day. Dr. Buskirk opined that Plaintiff had only moderate limitations in her ability to maintain concentration, persistence, and pace, while Dr. Causeya opined that Plaintiff's limitations were greater. Dr. Buskirk, a nonexamining agency physician, did not review Dr. Causeya's evaluation and testing results. Additionally, in the ALJ's adverse credibility determination – unchallenged by Plaintiff – the ALJ indicated Plaintiff exaggerated her symptoms. Accordingly, the proper remedy is to remand for further administrative proceedings to resolve these issues. *Treichler*, 775 F.3d at 1105. Furthermore, I decline to order immediate award of benefits because the record as a whole creates serious doubt as to whether Plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1020.

Based on the foregoing, I exercise my discretion and conclude a remand for further proceedings to permit the ALJ: (1) to reevaluate the medical evidence from Dr. Causeya; (2) to reassess Plaintiff's RFC, including her ability to sustain concentration, persistence, and pace, if necessary; (3) evaluate whether Plaintiff is capable of performing other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary; and (4) any other actions necessary to complete the record and issue a decision consistent with applicable law as set forth above.

////

////

////

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 4 day of MAY, 2017.

Malcolm F. Marsh
United States District Judge